[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts. which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks, claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company:"
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including without limitation those powers enumerated in Rhode Island General laws 8-2-11.1 (1985 Reenactment)
R.I.G.L. 8-2-11.1 provides, in pertinent part that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him; (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence: (5) To issue subpoenas for the appearance of witnesses, to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath:"
In accordance with the above, hearings were held on the above referenced claim in June and July of 1992 and June of 1994. At the conclusion of the hearing. the parties submitted Post-Hearing Memoranda.
Claimants are in possession of five accounts in the names of either Paul and Gail Calenda or New England Industries or Paul Calenda as trustee for Carmella Calenda. All of the above referenced Claimed Accounts are evidenced by passbooks that carry the name of Heritage and contain entries produced by typewriters or computers of the same type used at Heritage.
Claimants had a business relationship with Heritage for many years and had established numerous accounts during that time period including those accounts which are the subject of these hearings. It would appear that Claimants were among the largest depositors at Heritage.
During the period in question, Paul Calenda served as president and treasurer of New England Industries and his wife, Gail Ann Calenda served as vice president and secretary
After the failure of Heritage in 1990, the Claimants attempted to withdraw their funds from the Claimed Accounts. These claims were denied because, at that time, the records of Heritage reflected outstanding loans to either the Calendas and/or New England Industries in the amount $420,000. Since that time however, the Receiver of Heritage Loan and Investment has stipulated that the loan documents were, as the Claimants at first asserted, forgeries. In addition to these forgeries, these hearings dealt with stock certificates and a check in the amount of $200,000 made payable to Paul Calenda which were also found to be fraudulent.
After dealing with the above forgeries, the claims were denied because in the case of the first three, the Receiver could find no evidence of the accounts in the records of Heritage and for claims four and five, these accounts, which were reflected in the Heritage records, showed withdrawal slips for amounts that effectively closed those accounts.
Because of the number of Claimed Accounts involved the Court will deal with each separately:
FIRST CLAIMED ACCOUNT
This account was opened on March 4, 1988 with a check drawn on New England Industries in the amount of $100,000 The check was made payable to Heritage and contained the notation C.D. This check was reflected in the cash settlement sheet for March 7, 1988 and was cleared through the Heritage account at Fleet Bank As evidence of this account, the Claimants received a Heritage passbook numbered 10101-A. However, this account was never entered into records kept in the usual course of business at Heritage
SECOND CLAIMED ACCOUNT
This account was opened on July 25, 1989 with a New England Industries Check in the amount of $150,000 made payable to Heritage and likewise carrying the notation "C.D.". It also was cleared through the Fleet account maintained by Heritage. Claimants received as evidence of this transaction a Heritage passbook with the account number 02-14-001900-0. The passbook was typed rather than computer generated and was not recorded in the Heritage system. However, the typewriter used to make the passbook entries was the same type as those at Heritage.
Heritage computerized records do however reflect some similar types of transactions on this date. The records do reflect that on that date a deposit in that amount of $150,000 was deposited into an account numbered 01-01-18 held in the name of Joseph Mollicone, Jr., president of Heritage Loan and Investment. On that same date, three withdrawals totally $140,000 are noted and the cash settlements for that date show seven checks being issued to various Mollicone related dealings.
On January 25, 1990, the Claimants passbook, but not the Heritage records, shows an interest posting in the Claimed Account in the amount of $7,500 and a withdrawal of $110,000. Both entries are in the handwriting of Peter lannucilli, vice president of Heritage. Claimants acknowledge receiving a check for the $110,000 and have introduced it into evidence
THIRD CLAIMED ACCOUNT
On August 2, 1990 the third Claimed Account was opened with a cash deposit in the amount of $187,000. Claimants received a Heritage passbook with account number 02-12-00802-90. Mollicone, in his testimony at the hearing, has acknowledged that cash in that amount was brought into Heritage and given him by the Claimant.
FOURTH CLAIMED ACCOUNT
This account was reflected in the computerized records of Heritage and is referred in these proceedings as an "on-line" account and was opened on April 18, 1988 with a New England Industries check made payable to Heritage in the amount of $100,000 and carried the now familiar reference to "C.D.". The check was endorsed "for deposit only" and deposited into the Heritage General Account at Fleet on the same date. It is evidenced by a Heritage passbook with account number 02-000-6607-6.
This account is subject to these hearings because of a withdrawal slip dated October 5, 1990. The withdrawal slip carries the name Paul Calenda and removes the entire $100,000 from the Claimed Account. Claimant maintains that the signature is a forgery while the Receiver claims that it is indeed that of the Claimant. Both the Receiver and Claimant presented expert testimony to support their position.
FIFTH CLAIMED ACCOUNT
Also reflected in the computerized records of Heritage is this fifth account numbered 01-001229-4 opened by Claimants at the Pocassett Avenue branch of Heritage This account was held in the name of "Paul Calenda as Trustee for Carmella Calenda" and was a certificate of deposit that was "rolled over" a number of times until. on December 5, 1990 it was presented for payment.
Heritage records show a withdrawal on October 16, 1990 of $50,000 which is the amount for which claim number five is made. As evidence for this withdrawal. Receiver has introduced a withdrawal slip for that amount, dated that day, for the Claimed Account. However, the withdrawal slip is unsigned and the Receiver claims that Claimants implicitly authorized this withdrawal a contention that Claimants deny.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit, thrift certificate, investment certificate certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities, funds held to meet its acceptances or letters of credit, and withheld taxes; Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1). It must be shown that: (1) there is an unpaid balance: (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
In the instant case. Claimants testified that they opened what they thought were traditional on line accounts at an institution that they had been doing business with for a number of years They have presented as evidence thereof passbooks issued by Heritage Loan and Investment and deny that they were ever involved in any transactions other than what they thought were in the usual course of business at Heritage They readily admit dealing directly with both the president and vice president of the institution but maintain, as longtime customers as well as depositors of often large amounts of money, that they did not realize that anything was strange with this treatment.
As stated above, Joseph Mollicone, Jr. testified at the hearing. He stated that as to the three off line accounts (the First, Second and Third Claimed Accounts above) the Claimants deposited funds with him personally rather than with Heritage Furthermore, Mollicone claimed that Claimants were aware of this and sought out this arrangement because they wanted to avoid paying taxes on the interest these funds generated. It was, says Mollicone, understood that no Heritage records of these Claimed Accounts would be kept and therefore no deposit or withdrawal slips would be used.
Also, as to the two on line accounts (the Fourth and Fifth Claim Accounts above) Mollicone testified that he received signed withdrawal slips from Claimant Paul Calenda and acknowledges using that slip to withdraw the funds from the Fourth Claimed Account. For both of these accounts Mollicone claims he had Claimants authorization to withdraw funds from each account.
All of this is denied by the Claimants. At the hearings, they introduced into evidence Heritage passbooks. Their accountant Thomas Fuoco, testified that they in fact paid taxes on Claimed Accounts. Claimants also point to false documentation that surrounds their various accounts as evidence that they lacked knowledge of the real nature of their accounts.
This Court has carefully reviewed the evidence and the testimony of the witnesses for the various Claimed Accounts and finds that as to Claimed Accounts numbered one, two and three. Claims are entitled to $100,000, $47,500 and $187,000 respectively plus accrued interest. The Court finds that the Claimants testimony as to these claims is credible. That is not to say that Mollicone's testimony was entirely without foundation. Mollicone may indeed have sought an arrangement outside of normal Heritage practices yet all of the transactions were carried out as if they were in the usual course of Heritage business. The Court believes that the Claimants were, as to these three claims, unaware that they had entered into anything other than a normal banking relationship with Heritage.
However, as to the Fourth Claimed Account the Court denies the claim. Here, a signed withdrawal slip exists for the transaction of October 5, 1990. Claimants content that the signature is a forgery and presented expect testimony in support of their claim. The Receiver countered with their own expert who takes the contrary position that the signature is indeed that of Mr. Calenda. This battle of the experts is, only after long and careful consideration, decided in favor of the Receiver.
Claimants' position is clear and simple. They maintain that the signature was forged by someone at Heritage. In addition to their expert testimony, they point to a number of false documents stipulated to by the parties as in fact being false and conclude that a pattern of such behavior was common at Heritage. Claimants have never held that the signature was procured by fraud but rather that it is simply not that of the either Claimant.
The Court acknowledges the fact that a number of false documents are involved with these Claimed Accounts. However, none of the other forgeries show anything near the degree of sophistication of that involved in Fourth Claimed Account Most of the handwriting of such documents were easily identified as being those of one of the employees of Heritage. At no time did anyone there even attempt to duplicate the signature of another. They just simply signed that person's name. The Court finds the expert testimony of the Receiver to be credible as to this claim.
The Court will not speculate as to why the Claimants would sign a document clearly marked as a withdrawal slip for Mollicone Claimants obviously placed a great deal of trust in Mollicone and Heritage and by signing such a document gave explicit authorization to Mollicone to deal with those funds as he wished. Therefore, as to the Fourth Claimed Account, Claimant is denied priority because they authorized the withdrawal of funds.
Such is not the case as to the Fifth Claimed Account. Here, the only evidence offered by the Receiver is an unsigned withdrawal slip that removed $50,000 from the account. The Receiver claims implied authority for Mollicone based on previous arguments that the accounts were with Mollicone rather than Heritage. Since this Court has already rejected those arguments it will likewise reject the claim of implied authority to remove the funds. Accordingly, Claimant is entitled to priority for the Fifth Claimed Account.
In summary, this Court finds that priority is granted as to the First, Second, Third and Fifth Claimed Accounts and is denied as to the Fourth Claimed Account Counsel with prepare an order in accordance with this decision